**TECHMARK**
GREENSTEIN LAW, P.C.
TRADEMARK AND INTELLECTUAL PROPERTY LAW
TEL: (347) 514-7717

**NEIL D. GREENSTEIN**
ATTORNEY AT LAW
DIRECT TEL: (571) 206-4840
E-MAIL: NDG@TECHMARK.COM

TECHMARK®
1751 PINNACLE DRIVE
SUITE 1000
TYSONS, VA 22102

May 27, 2020

VIA EMAIL – orcains@aol.com
VIA FAX – 408-365-1710
CONFIRMATION COPY BY US MAIL

Mr. James Heppes
Professional Insurance Associates Inc.
1100 Industrial Road, #3
San Carlos, CA 94070

Re: Hurricane Electric LLC
Copyright Infringement Claims

Dear Mr. Heppes:

We represent Hurricane Electric LLC ("Hurricane" or "HE") in connection with copyright claims made by Attorney Kerry Culpepper on behalf of several plaintiffs. I understand that you are the insurance broker for Hurricane.

We ask that you immediately notify and tender to all carriers with which Hurricane has had insurance during the last 3 years. Please be sure to notify all insurance carriers, including without limitation, CGL carriers, specialty carriers, media policy carriers, D&O carriers, Excess limit carriers, and Umbrella carriers.

At present, I am only aware of the Package Policy from the Hanover Insurance Group, Policy No. ZHF H202007 00, with a policy period from 3/1/2020 to3/1/2021.

If you are aware of any other insurance agents or carries through which Hurricane secures insurance, please let me know immediately.

While no lawsuit has yet been filed, I attach the following letters and emails which outlines the claims.

1. March 19, 2020 letter from Attorney Kerry Culpepper;
2. My email to Attorney Culpepper dated April 6, 2020;

3.   My email to Attorney Culpepper dated April 19, 2020;

4.   Attorney Culpepper's letter dated May 1, 2020;

5.   My letter to Attorney Culpepper of May 15, 2020 (misdated as June 15, 2020);

6.   Attorney Culpepper's letter dated May 20, 2020.

Please acknowledge receipt of this letter and confirm that all carriers have been duly notified.

Thank you.

Sincerely yours,

Neil D. Greenstein
Counsel for Hurricane Electric LLC

Cc:  Hurricane Electric LLC


CULPEPPER IP, LLLC

ATTORNEY AT LAW

KERRY S. CULPEPPER *

* ADMITTED TO PRACTICE IN VIRGINIA, HAWAI'I AND BEFORE THE USPTO

75-170 HUALALAI ROAD, SUITE B204
KAILUA-KONA, HAWAII 96740

TEL: (808) 464-4047
FAX: (202) 204-5181

WWW.CULPEPPERIP.COM

PATENTS, TRADEMARKS & COPYRIGHTS

Via E-mail<copyright@he.net>

March 19, 2020

Via Certified Mail
Mike Leber, Agent for Hurricane Electric
Hurricane Electric LLC
760 Mission Court
Fremont, CA 94539

Re: Cease and Desist of Direct Copyright Infringement, Contributory Copyright Infringement at Hurricane Electric Subscriber IP addresses
My Reference and Case Number: 19-cv-169-LEK-KJM (District of Hawaii)

Dear Sir or Madam,

As explained below, I am writing to you regarding the Internet service Hurricane Electric ("HE") provides to its subscribers at IP addresses including but not limited to those discussed later in this letter ("subscribers"). My law firm represents the owners of the copyright protected motion pictures including but not limited to as shown below.

| NO. | OWNER | MOTION PICTURE | Copyright Certificate Number |
|---|---|---|---|
| 1 | Millennium Funding, Inc. | *Mechanic: Resurrection* | PA1998057 |
| 2 | Bodyguard Productions, Inc. | *The Hitman's Bodyguard* | PAu3844508 |
| 3 | UN4 Productions, Inc. | *Boyka: Undisputed* | PA0002000772 |
| 4 | Hunter Killer Productions, Inc. | *Hunter Killer* | PA2136168 |
| 5 | LHF Productions, Inc. | *London Has Fallen* | PA1982831 |
| 6 | Rambo V Productions, Inc. | *Rambo V: Last Blood* | PA2202971 |

| | | | |
|---|---|---|---|
| 7 | Fallen Productions, Inc. | *Angel Has Fallen* | PA2197434 |
| 8 | HB Productions, Inc. | *Hellboy* | PA2176664 |

On behalf of owners 1-5, my law firm filed a lawsuit here in Hawaii (1:19-cv-169) against operators of movie piracy websites under the name "YTS" for copyright infringement, contributory copyright infringement and intentional inducement.

We have determined that your subscribers have repeatedly infringed the copyright in my clients' motion pictures via the YTS websites, among other means.

***<u>Prior Notices sent to HE by My Firm</u>***

I sent first and second infringement notices per the Digital Millennium Copyright Action ("DMCA") to your agent on July 10, 2019 and July 12, 2019. (*See* Exhibits 1-2). The first notice concerned observed infringement of the motion picture *Hunter Killer* at the IP address 65.19.167.130 at timestamp 2018-10-19 09:16:51. The second DMCA notice concerned infringements of various motion pictures of my clients at the following dates and IP addresses:

| No. | IP address | Hit Date |
|---|---|---|
| 1 | 2001:470:b07e:0:d83a:a3ff:fe5e:ca | 2018-09-19 12:27:05.71563+00 |
| 2 | 216.218.222.14 | 2018-08-24 14:34:20.29611+00 |
| 3 | 216.218.222.12 | 2018-03-06 18:11:31.503688+00 |
| 4 | 65.19.167.130 | 2018-02-16 17:55:55.294389+00 |
| 5 | 216.218.222.14 | 2018-02-16 13:19:46.327169+00 |

Thousands of infringements of my clients' motion pictures have occurred at the above IP addresses.

***<u>Prior Notices sent to HE by Owners' Agent</u>***

My clients' agent has sent over 290 infringement notices to HE regarding 136 IP addresses at copyright@he.net requesting that HE take action. One such exemplary notice is attached to this letter as Exhibit "3". It does not appear that HE terminated the subscriber's account (IP address 74.82.60.174) or took any meaningful action in response to these notices. In fact, infringement continues to occur at the '174 IP address as recently as 3/18/2020. Examples of the numbers of notices sent for certain IP addresses is shown below.

| IP | Notices Sent |
|---|---|
| 184.105.255.230 | 11 |
| 74.82.60.174 | 7 |
| 74.82.60.175 | 6 |

| | |
|---|---|
| 72.52.87.188 | 6 |
| 74.82.60.74 | 5 |
| 72.52.87.94 | 5 |
| 74.82.60.91 | 5 |
| 72.52.87.78 | 5 |
| 72.52.87.91 | 4 |
| 74.82.60.191 | 4 |

The DMCA provides a safe harbor for qualified services providers from liability from copyright infringement. However, a requirement for safe harbor is that the service provider adopt and reasonably implement, and inform subscribers and account holders of the service provider's system or network of, a policy that provides for the ***termination*** in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers. *See* 17 USC 512(i)(1)(A). HE fails to qualify for a safe harbor because HE has not terminated the subscriber account despite the multiple notifications sent by my clients' agent.

Accordingly, my clients and I believe that HE is liable for these infringements of my clients' copyrights in violation of federal law under the Copyright Act, 17 USC §501. Remedies available to my clients include: An injunction against further infringement; Actual and statutory damages of up to $150,000/motion picture; and costs and attorney's fees.

Nonetheless, my clients would like to resolve this issue outside of litigation if possible. To do so, we request that: (1) HE agrees to immediate terminate all Internet service to the subscribers at the above IP addresses; (2) HE agrees to take the appropriate action to terminate subscriber accounts in response to all further copyright notifications received from my clients' agent; and (3) pay a portion of my clients' damages.

I look forward to receiving your affirmative response that you desire to fully comply with the above-stated requests by May 15, 2020 so that we can discuss this issue further. My clients would like to resolve this matter amicably but will consider any and all legal action necessary to protect their valuable intellectual property rights under federal and state law.

This letter is written without prejudice to the rights and remedies of our client, all of which are expressly reserved.

Sincerely,

Kerry S. Culpepper
kculpepper@culpepperip.com

Attachment: Exhibits 1-3



CULPEPPER IP, LLLC

ATTORNEY AT LAW

KERRY S. CULPEPPER *

* ADMITTED TO PRACTICE IN VIRGINIA, HAWAI'I AND BEFORE THE USPTO

75-170 HUALALAI ROAD, SUITE B204
KAILUA-KONA, HI 96740

TEL: (808) 464-4047
FAX: (202) 204-5181

WWW.CULPEPPERIP.COM

SPECIALIZING IN PATENTS, TRADEMARKS & COPYRIGHTS

July 10, 2019

**VIA EMAIL < COPYRIGHT@HE.NET > AND FIRST CLASS MAIL**

Copyright Agent, Hurricane Electric Internet Services
Attn: Copyright Compliance
Hurricane Electric Internet Services
760 Mission Court
Fremont, CA 94539

Re: Copyright Claim of allegation of contributory copyright infringement on websites registered or affiliated with Hurricane Electric

Dear Sirs:

An electronic signature of the copyright owner, or a person authorized to act on behalf of the owner, of an exclusive copyright that has allegedly been infringed.

Kerry S. Culpepper authorized to act on behalf of owner Hunter Killer Productions, Inc.

/Kerry S. Culpepper/

State your contact information, including your TRUE NAME, street address, telephone number, and email address.

Kerry S. Culpepper, Esq.

Culpepper IP, LLLC

75-170 Hualalai Road

Suite B204

Kailua-Kona, Hawaii 96740

US Tel 1-808-464-4047

kculpepper@culpepperip.com

Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works on that site.

**Exhibit "1"**

Infringement of the motion picture Hunter Killer is/was induced by (1) the content (promotional language of YTS); and/or (2) the link to download the torrent file of the motion pictures at the websites:

YTS.AM

Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit Hurricane Electric to locate the material.

(1) the content (promotional language of YTS); and/or (2) the link to download the motion picture at the websites:

YTS.AM

65.19.167.130 2018-10-19 09:16:51

Information reasonably sufficient to permit Hurricane Electric to contact the Complaining Party, such as an address, telephone number, and, if available, an electronic mail address at which the Complaining Party may be contacted.

Kerry S. Culpepper, Esq.

Culpepper IP, LLLC

75-170 Hualalai Road

Suite B204

Kailua-Kona, Hawaii 96740

US Tel 1-808-464-4047

A statement that the Complaining Party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

I, have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

A statement that the information in the notification is accurate, and under penalty of perjury, that the Complaining Party is the owner, or is authorized to act on behalf of the owner, of an exclusive right that is allegedly infringed.

The information in the notification is accurate, and under penalty of perjury, I am authorized to act on behalf of the owner, Hunter Killer Productions, Inc. of an exclusive right that is allegedly infringed.

Sincerely,

/ksc/

Kerry S. Culpepper


Culpepper IP

# CULPEPPER IP, LLLC

ATTORNEY AT LAW

75-170 HUALALAI ROAD, SUITE B204
KAILUA-KONA, HI 96740

KERRY S. CULPEPPER *

TEL: (808) 464-4047
FAX: (202) 204-5181

* ADMITTED TO PRACTICE IN VIRGINIA, HAWAI'I
AND BEFORE THE USPTO

WWW.CULPEPPERIP.COM

SPECIALIZING IN PATENTS, TRADEMARKS & COPYRIGHTS

July 12, 2019
**VIA FIRST CLASS MAIL**

Copyright Agent, Hurricane Electric Internet Services
Attn: Copyright Compliance
Hurricane Electric Internet Services
760 Mission Court
Fremont, CA  94539

Re: Copyright Claim of allegation of contributory copyright infringement on
websites registered or affiliated with Hurricane Electric

Dear Sirs:

An electronic signature of the copyright owner, or a person authorized to act on behalf of
the owner, of an exclusive copyright that has allegedly been infringed.

Kerry S. Culpepper authorized to act on behalf of owner Hunter Killer Productions, Inc.

/Kerry S. Culpepper/

State your contact information, including your TRUE NAME, street address, telephone
number, and email address.

Kerry S. Culpepper, Esq.

Culpepper IP, LLLC

75-170 Hualalai Road

Suite B204

Kailua-Kona, Hawaii 96740

US Tel 1-808-464-4047

kculpepper@culpepperip.com

Identification of the copyrighted work claimed to have been infringed, or, if multiple
copyrighted works at a single online site are covered by a single notification, a representative
list of such works on that site.

**Exhibit "2"**

Infringement of the motion picture Hunter Killer is/was induced by (1) the content (promotional language of YTS); and/or (2) the link to download the torrent file of the motion pictures at the websites YTS.AM, YTS.AG and YTS.GG hosted and/or supported at following IP addresses at following times:

| No. | IP address | Hit Date | Infringing Website |
|---|---|---|---|
| 1 | 2001:470:b07e:0:d83a:a3ff:fe5e:ca | 2018-09-19 12:27:05.71563+00 | yts.ag |
| 2 | 216.218.222.14 | 2018-08-24 14:34:20.29611+00 | yts.am |
| 3 | 216.218.222.12 | 2018-03-06 18:11:31.503688+00 | yts.gg |
| 4 | 65.19.167.130 | 2018-02-16 17:55:55.294389+00 | yts.gg |
| 5 | 216.218.222.14 | 2018-02-16 13:19:46.327169+00 | yts.gg |

Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit Hurricane Electric to locate the material.

(1) the content (promotional language of YTS); and/or (2) the link to download the motion picture at the websites:

YTS.AM, YTS.AG and YTS.GG.

Information reasonably sufficient to permit Hurricane Electric to contact the Complaining Party, such as an address, telephone number, and, if available, an electronic mail address at which the Complaining Party may be contacted.

Kerry S. Culpepper, Esq.

Culpepper IP, LLLC

75-170 Hualalai Road

Suite B204

Kailua-Kona, Hawaii 96740

US Tel 1-808-464-4047

A statement that the Complaining Party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

I, have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

A statement that the information in the notification is accurate, and under penalty of perjury, that the Complaining Party is the owner, or is authorized to act on behalf of the owner, of an exclusive right that is allegedly infringed.

The information in the notification is accurate, and under penalty of perjury, I am authorized to act on behalf of the owner, Hunter Killer Productions, Inc. of an exclusive right that is allegedly infringed.

Sincerely,
/ksc/
Kerry S. Culpepper

**From:** notice@notices.copyrightmanagementservicesltd.com
**To:** copyright@he.net
**Cc:** ccbk@notices.copyrightmanagementservicesltd.com
**Subject:** Notice of Claimed Infringement [Case No. 40559578682]
**Date:** Friday, March 6, 2020 12:36:30 AM

-----BEGIN PGP SIGNED MESSAGE-----
Hash: SHA256

Notice of Claimed Infringement

Notice ID: 40559578682
Notice Date: 2020-03-06 10:36:30

Dear Sir or Madam:

This message is sent on behalf of Fallen Productions, Inc..

Under penalty of perjury, I assert that Copyright Management Services, Ltd. (CMS) is authorized to act on behalf of the owner of the exclusive copyrights that are alleged to be infringed herein.

Fallen Productions, Inc. owns the copyrights to the movie Angel Has Fallen. The unauthorized download and distribution of this file by your IP address constitutes copyright infringement.

Please see below details for the infringements:

Protocol: BITTORRENT
Infringed Work: Angel Has Fallen
Infringing FileName: Angel.Has.Fallen.2019.WEB-DL.x264-FGT
Infringing FileSize: 1236049106
Infringer's IP Address: 74.82.60.174
Infringer's Port: 54527
Initial Infringement Timestamp: 2020-02-08 16:00:25

And, you're also creating a security risk on your computers, devices and networks when you download unauthorized movies or allow others to do so from your Internet connection.

We respectfully ask that you stop infringing and redistributing Fallen Productions, Inc. copyright protected content, and take the proper steps to secure your Internet so that others do not infringe and redistribute our content as well.

We have a good faith belief that use of the copyrighted material detailed above is not authorized by the copyright owner, its agent, or the law. In addition, we have a good faith subjective belief that the use does not constitute fair use. The information in this notice is accurate and we state, under penalty of perjury, that we are authorized to act on behalf of the owner of the copyright that is allegedly infringed. This letter is not a complete statement of Fallen Productions, Inc.'s rights in connection with this matter, and nothing contained herein constitutes an express or implied wavier of any rights or remedies of Fallen Productions, Inc. in connection with this matter, all of which are expressly reserved.

We appreciate your assistance and thank you for your cooperation in this matter.

Respectfully,

Catherine Hyde

**Exhibit "3"**

Copyright Management Services Ltd.
notice@notices.copyrightmanagementservicesltd.com
Address:
43 Berkeley Square
London W1J 5AP
United Kingdom

<?xml version="1.0" encoding="UTF-8"?>
<Infringement>
<Case>
<ID>40559578682</ID>
</Case>
<Complainant>
<Entity>Fallen Productions, Inc.</Entity>
<Contact>Catherine Hyde</Contact>
<Address>43 Berkeley Square London W1J 5AP United Kingdom</Address>
<Email>notice@notices.copyrightmanagementservicesltd.com</Email>

</Complainant>
<Service_Provider>
<Entity>Hurricane Electric</Entity>
<Address>907-651 Nootka Way, Port Moody, BC V3H 0A1, CA</Address>
<Phone>+1-604-724-9612</Phone>
<Email>copyright@he.net</Email>
</Service_Provider>
<Source>
<TimeStamp>2020-02-08T16:00:25Z</TimeStamp>
<IP_Address>74.82.60.174</IP_Address>
<Port>54527</Port>
<Type>BitTorrent</Type>
</Source>
<Content>
<Item>
<Title>Angel Has Fallen</Title>
<FileName>Angel.Has.Fallen.2019.WEB-DL.x264-FGT</FileName>
<FileSize>1236049106</FileSize>
<Type>Movie</Type>
<Hash Type="SHA1">DFCBE824F95FDE2C814953240BD598B7ADF8DB66</Hash>
</Item>
</Content>
</Infringement>
-----BEGIN PGP SIGNATURE-----

iQIIBAEBCAByBQJeYievaxxDYXRoZXJpbmUgSHlkZSAoQ29weXJpZ2h0IE1hbmFn
ZW1lbnQgU2VydmljZXMgTGltaXRlZCkgPG5vdGljZUBub3RpY2VzLmNvcHlyaWdo
dG1hbmFnZW1lbnRzZXJ2aWNlc2x0ZC5jb20+AAoJEPSJdnWuCmlX4acMAKz8utQd
9jY3KK04uvQ30apxgAkOq8kytbUSh4S4VZoxkGbpzzkG8OYE/NRybpBbbEK5s7+E
uoLUtZYtX1T3Ahgw4B7JL8B4qAWaKK4UGzXtO6Nz8mAdYuJKvTo9D/INgJr/pG9X
PlvXMo3OaLIWW7wyrdndwHkaG2NIayL04lmgzyBMqC0xEwiaYCPwT/FDb0el8gRd
ARHzgQgGf7h6l5U+1WAVDDFAvOaf8Y8lwJI7iGyd9BALrtvVVL96U1jidE2F8G40
eUOBcF8x5GSm/WdVAunWM7TGnfaUyWrCYfaIfttkQ8aY1khuKYH/a+h/6YfQTmCh
YYm7yt7pyQb6htolgFS5+MoivEVN3v3VRJYDvC+YqQ9DfozEPBWzgEF6o1cej0Tx
QuSfzoYuVC0VC/0LTU4op8TNUGoO62714CLIzhsWz8rBV+l3immvvlNRLCuCGPuY
x2ibPZFuVZCu78NEMUZ+BWN0UB2ePRuFrg0OpM/BFDrg2cZloI9BayGuVw==

=elxY
-----END PGP SIGNATURE-----

**Neil D. Greenstein**

---

**From:** Neil D. Greenstein <ndg@techmark.com>
**Sent:** Monday, April 6, 2020 8:42 PM
**To:** 'kculpepper@culpepperip.com'
**Cc:** 'Angel Riordan'
**Subject:** Hurricane Electric -- Copyright Infringement Claim -- Your Ref: 19-cv-169-LKE-KJM

Kerry:

This email follows up on our telephone introduction a short time ago. Thank you for calling me back.

Our firm has been retained to represent Hurricane Electric LLC in connection with the dispute raised in your letter of March 19, 2020. Please direct all further correspondence in this matter to our firm.

As I'm sure you can appreciate, claimants typically seek information from internet providers and appropriate information is often provided as the provider has no interest and is, indeed, protected under the law. It appears from your letter that you are seeking something outside of the typical request and this matter has been referred to our firm.

I understand that my client has sent you a number of emails as well as various documents. As I'm sure you know, the San Francisco Bay area is one of the nation's COVID-19 hotspots and my client has limited access to its files relating to prior communications with you. As such, I ask that you provide me with a complete set of the communications and documents so that we are able to discuss this matter on an equal footing rather than waiting until after litigation is filed against my client. I understand that there was also some discussion of a declaration from my client and I would ask for all drafts that were sent to him and any revisions and executions that he sent to you. Obviously, after litigation we can obtain the emails and documents in discovery. My goal is to see if a non-litigation resolution can be reached particularly since my client has no interest in the dispute between your clients and the alleged infringers.

As I promised in our call, I am providing a secure link for you to upload any documents that my client may have sent to you -- https://lawinmotion.dscloud.biz:5101/sharing/KxYkjmon6 I provided the upload password to you in our call, but if you need it again, let me know.

If you are sending materials or copies of email to me by email, please copy my colleague, Angel, on amr@techmark.com

Once we receive the documents from you and whatever else our client has, we can prepare an appropriate response and see if a resolution can be reached.

I envy you on the Big Island in that, even though one of my friends tested positive (but has since been cleared by the Health Department) on the Big Island for COVID-19, I understand that there have been no COVID-19 hospitalizations on the Big Island. Governor Ige has clearly been taking the right actions to stem spread of the novel virus.

I look forward to hearing from you.

Stay safe and healthy.

Regards,

--Neil

P.S. You asked if 571-206-4840 was my personal line or an office line. This number is my direct dial line – it is a VoIP line that rings both my office desk phone and my cell phone -- and is the best number to reach me. The main number in my signature block, after you choose my name in the auto-attendant, rings only my office desk phone.

---------------------------------------------

Neil D. Greenstein
TechMark®
Attorneys-at-Law
Direct: (571) 206-4840
Main: (347) 514-7717
Email: ndg@techmark.com

TechMark Greenstein Law, P.C.
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102

Phone Listing: www.lawinmotion.com

Law In Motion®

No trees were killed in the sending of this message.
This email was produced with the highest quality bytes and Grade-A electrons; why degrade it by printing it on an obsolete medium like paper?

==========================================================================================

This e-mail message is the property of, and © 2020 TechMark Greenstein Law, P.C. It is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please contact sender by reply e-mail and destroy all copies of the original message.
Federal tax regulations require us to notify you that any tax advice in this electronic message was not intended or written to be used, and cannot be used, for the purpose of avoiding penalties.

**Neil D. Greenstein**

---

**From:** Neil D. Greenstein <ndg@techmark.com>
**Sent:** Sunday, April 19, 2020 8:00 PM
**To:** 'kculpepper@culpepperip.com'
**Cc:** 'Angel Riordan'
**Subject:** RE: Hurricane Electric -- Copyright Infringement Claim -- Your Ref: 19-cv-169-LKE-KJM

Kerry:

I trust you are staying well. I see that there was a spike of 17 COVID-19 cases in Kona yesterday. It appears that the outbreak was tied to a McDonald's restaurant only a few blocks from your office.
https://www.hawaiinewsnow.com/2020/04/18/kona-cluster-coronavirus-grows-with-people-now-infected/

Thank you very much for upload the documents consisting of 41 pages.

In our initial review of the materials from you and our client, we note that you have expressly stated that there are some people that you do **not** represent. While we can certainly review and discuss the matters on which you are engaged counsel, it would be inappropriate for us to provide information relating to third parties. Moreover, such discussion of third parties may well violate that customer's rights of privacy and/or violate contract terms.

Please identify the clients you represent and the IP address on which your clients' rights have allegedly been infringed. We can then address those claims.

Thank you.

--Neil

-------------------------------------------------
Neil D. Greenstein
TechMark®
Attorneys-at-Law
Direct: (571) 206-4840
Main: (347) 514-7717
Email: ndg@techmark.com

TechMark Greenstein Law, P.C.
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102

Phone Listing: www.lawinmotion.com

Law In Motion®

No trees were killed in the sending of this message.

This email was produced with the highest quality bytes and Grade-A electrons; why degrade it by printing it on an obsolete medium like paper?

==========================================================================================
This e-mail message is the property of, and © 2020 TechMark Greenstein Law, P.C. It is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please contact sender by reply e-mail and destroy all copies of the original message.
Federal tax regulations require us to notify you that any tax advice in this electronic message was not intended or written to be used, and cannot be used, for the purpose of avoiding penalties.

---

**From:** Neil D. Greenstein <ndg@techmark.com>
**Sent:** Monday, April 6, 2020 8:42 PM
**To:** 'kculpepper@culpepperip.com' <kculpepper@culpepperip.com>
**Cc:** 'Angel Riordan' <amr@techmark.com>
**Subject:** Hurricane Electric -- Copyright Infringement Claim -- Your Ref: 19-cv-169-LKE-KJM

Kerry:

This email follows up on our telephone introduction a short time ago. Thank you for calling me back.

Our firm has been retained to represent Hurricane Electric LLC in connection with the dispute raised in your letter of March 19, 2020. Please direct all further correspondence in this matter to our firm.

As I'm sure you can appreciate, claimants typically seek information from internet providers and appropriate information is often provided as the provider has no interest and is, indeed, protected under the law. It appears from your letter that you are seeking something outside of the typical request and this matter has been referred to our firm.

I understand that my client has sent you a number of emails as well as various documents. As I'm sure you know, the San Francisco Bay area is one of the nation's COVID-19 hotspots and my client has limited access to its files relating to prior communications with you. As such, I ask that you provide me with a complete set of the communications and documents so that we are able to discuss this matter on an equal footing rather than waiting until after litigation is filed against my client. I understand that there was also some discussion of a declaration from my client and I would ask for all drafts that were sent to him and any revisions and executions that he sent to you. Obviously, after litigation we can obtain the emails and documents in discovery. My goal is to see if a non-litigation resolution can be reached particularly since my client has no interest in the dispute between your clients and the alleged infringers.

As I promised in our call, I am providing a secure link for you to upload any documents that my client may have sent to you -- https://lawinmotion.dscloud.biz:5101/sharing/KxYkjmon6 I provided the upload password to you in our call, but if you need it again, let me know.

If you are sending materials or copies of email to me by email, please copy my colleague, Angel, on amr@techmark.com

Once we receive the documents from you and whatever else our client has, we can prepare an appropriate response and see if a resolution can be reached.

I envy you on the Big Island in that, even though one of my friends tested positive (but has since been cleared by the Health Department) on the Big Island for COVID-19, I understand that there have been no COVID-19 hospitalizations on the Big Island. Governor Ige has clearly been taking the right actions to stem spread of the novel virus.

I look forward to hearing from you.

Stay safe and healthy.

Regards,

--Neil

P.S. You asked if 571-206-4840 was my personal line or an office line. This number is my direct dial line – it is a VoIP line that rings both my office desk phone and my cell phone -- and is the best number to reach me. The main number in my signature block, after you choose my name in the auto-attendant, rings only my office desk phone.

----------------------------------------------

Neil D. Greenstein
TechMark®
Attorneys-at-Law
Direct: (571) 206-4840
Main: (347) 514-7717
Email: ndg@techmark.com

TechMark Greenstein Law, P.C.
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102

Phone Listing: www.lawinmotion.com

Law In Motion®

No trees were killed in the sending of this message.
This email was produced with the highest quality bytes and Grade-A electrons; why degrade it by printing it on an obsolete medium like paper?

================================================================================

This e-mail message is the property of, and © 2020 TechMark Greenstein Law, P.C. It is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please contact sender by reply e-mail and destroy all copies of the original message.
Federal tax regulations require us to notify you that any tax advice in this electronic message was not intended or written to be used, and cannot be used, for the purpose of avoiding penalties.



CULPEPPER IP, LLLC

ATTORNEY AT LAW

75-170 HUALALAI ROAD, SUITE B204
KAILUA-KONA, HAWAII 96740

TEL: (808) 464-4047
FAX: (202) 204-5181

WWW.CULPEPPERIP.COM

PATENTS, TRADEMARKS & COPYRIGHTS

KERRY S. CULPEPPER *

* ADMITTED TO PRACTICE IN VIRGINIA, HAWAI'I AND BEFORE THE USPTO

Via E-mail Only<ndg@techmark.com>

May 1, 2020

Neil D. Greenstein
TechMark Greenstein Law, P.C.
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102

Re: Cease and Desist of Direct Copyright Infringement, Contributory Copyright Infringement at Hurricane Electric Subscriber IP addresses
My Reference and Case Number: 19-cv-169-LEK-KJM (District of Hawaii)

Dear Mr. Greenstein,

I am writing in reply to your email of 4/19/2020 in which you requested that I "…identify the clients [I] represent and the IP address on which [my] clients' rights have allegedly been infringed."

At least the following motion pictures of my clients were confirmed infringed at HE IP addresses as of March 18, 2020.

| NO. | OWNER | MOTION PICTURE |
|---|---|---|
| 1 | Millennium Funding, Inc. | *Mechanic: Resurrection* |
| 2 | Bodyguard Productions, Inc. | *The Hitman's Bodyguard* |
| 3 | UN4 Productions, Inc. | *Boyka: Undisputed IV* |
| 4 | Homefront Productions, Inc./ Millennium | *Homefront* |
| 5 | Dallas Buyers Club, LLC | *Dallas Buyers Club* |
| 6 | Glacier Films 1, LLC | *American Heist* |

| | | |
|---|---|---|
| 7 | Criminal Productions, Inc. | *Criminal* |
| 8 | Clear Skies Nevada, LLC/Voltage | *Good Kill* |
| 9 | Cook Productions, LLC | *Mr. Church* |
| 10 | WWE Studios Finance Corp | *Eliminators* |
| 11 | Hunter Killer Productions, Inc. | *Hunter Killer* |
| 12 | LHF Productions, Inc. | *London Has Fallen* |
| 13 | Rambo V Productions, Inc. | *Rambo V: Last Blood* |
| 14 | Fallen Productions, Inc. | *Angel Has Fallen* |
| 15 | Wicked Nevada, LLC | *Extremely Wicked Shockingly Evil and Vile* |
| 16 | MON, LLC/ Voltage | *Welcome Home* |
| 17 | 211 Productions, Inc./ Millennium | *211* |
| 18 | TBV Productions, LLC/Voltage | *I Feel Pretty* |
| 19 | CELL Film Holdings, LLC | *Cell* |
| 20 | Fathers & Daughters Nevada, LLC/Voltage | *Fathers and Daughters* |
| 21 | Venice PI, LLC | *Once Upon a Time in Venice* |
| 22 | I am Wrath Production, Inc. | *I Am Wrath* |
| 29 | HB Productions, Inc. | *Hellboy* |
| 31 | Headhunter, LLC | *A Family Man* |

| | | |
|---|---|---|
| 34 | POW Nevada, LLC/Voltage | *Revolt* |
| 35 | Status Update, LLC/Voltage | *Status Update* |
| 36 | Stoic Productions, Inc. /Millennium | *Acts of Vengeance* |
| 37 | Killing Link Distribution, LLC | *Kill Chain* |
| 38 | Cobbler Nevada, LLC/Voltage | *The Cobbler* |
| 39 | Survivor Productions, Inc. | *Survivor* |

I further reserve the right to supplement the above list.

I have attached an excel spreadsheet with all IP addresses at which my clients motion pictures have been infringed.

I look forward to hearing back from you by May 15, 2020 so that we can discuss this issue further.

This letter is written without prejudice to the rights and remedies of our client, all of which are expressly reserved.

Sincerely,

/ksc/
Kerry S. Culpepper
kculpepper@culpepperip.com

**TECHMARK**
GREENSTEIN LAW, P.C.
TRADEMARK AND INTELLECTUAL PROPERTY LAW
TEL: (347) 514-7717

NEIL D. GREENSTEIN
ATTORNEY AT LAW
DIRECT TEL: (571) 206-4840
E-MAIL: NDG@TECHMARK.COM

TECHMARK®
1751 PINNACLE DRIVE
SUITE 1000
TYSONS, VA 22102

June 15, 2020

Kerry S. Culpepper, Esq.
Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua Kona, HI 96740

**Re: Allegations of Copyright Infringement against Hurricane Electric**

Dear Mr. Culpepper,

I write in response to your letter of March 19, 2020 ("March 19, 2020 Letter"), my email to you seeking additional information relating to your claims in the March 19, 2020 letter, and your subsequent letter of May 1, 2020 ("May 1, 2020 Letter") (together, March 19, 2020 Letter and May 1, 2020 Letter are hereinafter the "Letters").

First, I would point out that your March 19, 2020 Letter, and the subpoena[1] you obtained dated July 12, 2019, complained about alleged infringing activities on four (4) IP addresses. I called you to inform you of my representation of Hurricane Electric ("HE"), and you called me back on April 6, 2020. I confirmed to you my representation of HE and informed you that I learned you previously had communications with my client. As such, I asked you to forward me copies of all such communications. You subsequently uploaded 41 pages of documents purporting to be the total communications directly between you and my client.

After reviewing the documents that you uploaded, it appeared that you were not representing all of the clients mentioned in your March 19, 2020 letter. As such, I sent you an email on April 19, 2020 asking you to identify which clients you represented and the IP addresses on which such client's rights had allegedly been infringed.

[1] We believe the subpoena was not properly issued and Hurricane reserves all rights with respect to the validity and propriety of that subpoena.

You then responded on May 1, 2020 and instead of claiming to represent a subset of some 8 clients, you now claim to represent some 39 clients. In addition, you provided an attachment of some 2300+ IP addresses on which you claim infringement occurred. Notably, your letter failed to identify sufficient facts even to make out a prima facie case of infringement.

I provide below some information for you about HE relating to the overall and general nature of HE activities. While you presumably know these facts based upon your research and your calls with my client, I provide them to ensure there is no doubt about HE's activities. After this letter should any of your clients decide to continue this dispute, I insist that each of your clients' claims be segregated. We want to be sure to address each client's claims specifically, and confusion is inevitable if you are not clear which client is making each claim.

**Hurricane Electric is an Online Service Provider**

With respect to the activities that you complained of, HE is an Online Service Provider ("OSP") and does not "host," have access to or have control over the content provided by its customers/subscribers. HE simply acts as a "highway" and provides subscribers with internet access. HE internet connections are B2B-type connections and are most often to a data center, an ISP, the government[2], or a major business. Even though HE is a small company founded in Mr. Lieber's garage, it competes with the niche "B2B" online access side of Verizon, Comcast, AT&T. For example, as you know, HE provides network access to ISPs (Internet Service Providers) – who typically use that connection to provide service to hundreds or thousands of third-party subscribers.

Your letters prematurely jump into "safe harbors" under the DMCA, but you are well experienced in copyright law and you know that you must first show liability. It is only if there is liability that a safe harbor even becomes potentially relevant. It is simply wrong and indeed illogical for anyone to suggest that a company may have liability for an alleged failure to follow a safe harbor when no liability exists under the copyright (or other) law.

[2] As you know, some of the IP addresses in issue were provided to the U.S. Navy's Naval Research Labs. I find it interesting that you asked a federal district court for a subpoena relating to a potential claim against the US Navy, when you know that claims against the US Government MUST be brought in the US Federal Court of Claims and that the Federal District Courts do not have jurisdiction over such claims. That issue is, however, is for another day should any of your clients decide to proceed.

To address this logically, one must first analyze whether or not there is even potential liability by HE. Only if there is potential liability need one address whether there is "protection" from an otherwise potential liability under a safe harbor. Your letter seems to suggest that if a company does not fit into a safe harbor there is liability without regard to whether there is copyright infringement. While that would be a novel approach, such an approach is unsupported in the law.

**Hurricane Electric Has Not Infringed Any of Your Client's Copyrights**

Had you analyzed the law instead of making a conclusory assumption of liability, the only reasonable conclusion is that HE has no liability whether for direct, contributory, or vicarious copyright infringement.

"As a threshold question, a plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004), *citing* 17 U.S.C. Section 501(a)(2003); *Ets-Hokin*, 225 F.3d at 1073. You have only provided to HE a chart of alleged copyrights (including the alleged owner, and motion picture title) and in your May 1, 2020 letter you have neither alleged that the copyrights are registered nor have you provided alleged copyright certificates. Nonetheless, even if one were to assume that the copyrights were registered and valid, infringement is still lacking.

***Direct Copyright Infringement***

To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act. *Robertson*, 357 F.3d at 1076, *citing A & M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Your Letters never allege, nor could they, that HE directly infringed or violated any of your clients' rights under the Copyright Act. You have alleged, instead, simply that one or more of HE's subscribers have violated your clients' rights. Based on this, your Letters effectively admit that HE is not liable for any direct copyright infringement.

***Contributory Copyright Infringement***

To prove a claim of contributory copyright infringement, a plaintiff must show that the defendant, with knowledge of the infringing activity, induced, caused or materially contributed to the infringing conduct of another. *See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Your Letters similarly fail to establish that HE is guilty of contributory infringement.

The Second circuit is not alone in its analysis of contributory infringement. Indeed, the Ninth Circuit – of course, the circuit where you are located and where HE is located – has spoken loud and clear on the issue. In a recent published precedential decision of which you are aware[3], *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d. 1142 (9th Cir., 2018)(copy attached), Cobbler Nevada didn't have the hubris to sue Comcast – in that case the ISP (a party one level closer to the alleged infringer than HE is in your allegations) -- but obtained records from Comcast that Gonzales was assigned the IP address in issue. The District Court found no infringement liability against the subscriber, Gonzales, and the 9th circuit affirmed both the finding of no infringement and the award of attorneys' fees against Cobbler Nevada. As to direct infringement, the 9th circuit stated:

> The only connection between Gonzales and the infringement was that he was the registered internet subscriber and that he was sent infringement notices. To establish a claim of copyright infringement, Cobbler Nevada "must show that [it] owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Cobbler Nevada has not done so.

As to the claim of contributory infringement, the 9th circuit was similarly instructive and definitive.

> We have adopted the well-settled rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) (alteration in original)

---

[3] Your client is the party that not only lost but had to pay attorneys' fees. Certainly, you became aware of this case, at the very least, as part of the normal vetting in taking on a representation of a client.

> (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 914, 930 (2005)). Stated differently, "liability exists if the defendant engages in personal conduct that encourages or assists the infringement." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) (internal quotation marks omitted). A claim for contributory infringement requires allegations that the defendant is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (brackets omitted) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159, 1162 (2d Cir. 1971)). **Cobbler Nevada's contributory infringement claim is premised on a bare allegation that Gonzales failed to police his internet service. This perfunctory allegation, without more, does not sufficiently link Gonzales to the alleged infringement.** (emphasis added)

The 9th Circuit went on to state:

> We analyze contributory liability "in light of 'rules of fault-based liability derived from the common law,' and common law principles establish that intent may be imputed." *Id.* at 1170–71 (quoting *Grokster*, 545 U.S. 934–35).
>
> Turning to the first strand, Cobbler Nevada's complaint lacks any allegations that Gonzales "actively encourage[ed] (or induc[ed]) infringement through specific acts." *Id.* at 1170. Nothing in Cobbler Nevada's complaint alleges, or even suggests, that Gonzales actively induced or materially contributed to the infringement through "purposeful, culpable expression and conduct." *Grokster*, 545 U.S. at 937.

Just like Cobbler Nevada's claim in the *Gonzales* case, none of your clients (including Cobbler Nevada) have, nor could they have consistent with FRCP 11 in that HE is merely an online service provider of internet network access, made any allegations that HE "actively induced or materially contributed to the infringement through "purposeful, culpable expression and conduct."

The 9th Circuit continued –

> Nor does the second strand implicate Gonzales. Providing internet access can hardly be said to be distributing a product or service that is not "capable of substantial" or "commercially significant noninfringing uses." *Sony*, 464 U.S. at 442.

HE is an online service provider which provides internet connections to major companies and government organizations. Your clients can not credibly suggest that the U.S. Navy doesn't have significant "noninfringing" use for an internet connection. Nor could your clients credibly suggest that an Internet Service Provider to which HE provides it online service doesn't have a significant "noninfringing" use.

Your clients, including Cobbler Nevada, know that their theories "both stray[s] from precedent and effectively create[s] an affirmative duty for private internet subscribers to actively monitor their internet service for infringement." In *Cobbler Nevada*, the 9th circuit noted that "[i]mposing such a duty would put at risk any purchaser of internet service who shares access with a family member or roommate, or who is not technologically savvy enough to secure the connection to block access by a frugal neighbor. This situation hardly seems to be one of "the circumstances in which it is just to hold one individual accountable for the actions of another."

In view of the clear ruling by the 9th Circuit, the egregiousness of your clients' allegations is further evident from the fact that HE is not the private internet subscriber and is not even the ISP. HE is an online service provider – who sells network connections to ISPs.

Absent facts from your clients that HE "actively induced or materially contributed to the infringement through "purposeful, culpable expression and conduct," I don't believe your clients will make it past a FRCP 12(b)(6) motion to dismiss. Indeed, in view of the Cobbler Nevada case, your clients will likely not only lose such a motion, but will likely have to pay HE's attorneys fees. In my view, there is also a significant risk of sanctions by the Court.

If you believe that HE has actively induced or materially contributed to the infringement through "purposeful, culpable expression and conduct," or is somehow infringing your clients' rights, you must provide me with those facts and theories. Again, this must be done on a client by client basis and should include all of the facts supporting a prima facie case including copyright registration certificates, and evidence in support of your clients' claims.

Simply put, we don't believe that HE has engaged in contributory copyright infringement.

***Vicarious Copyright Infringement***

To prove a claim of vicarious copyright infringement, a plaintiff must show that the defendant enjoys or enjoyed a direct financial benefit from another's infringing activity and has the right and ability to supervise the infringing activity. *See Robertson*, 357 F.3d at 1076, *citing Napster, Inc.,* 239 F.3d at 1022 (citing *Gershwin Publ'g Corp.,* 443 F.2d at 1162); *Fonovisa, Inc., v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* Section 12.04[A][1] (perm.ed., rev.vol.2003). HE has no ability to supervise or control any relevant content and has no hand in the making or distribution of such content. HE has no direct financial interest in any of the purchasers of the internet connections and gets no financial benefit from any alleged infringing activity by a user. Moreover, HE is an OSP providing only an internet network connection and has no control over, the content itself. HE's customers or HE's customer's customers, or even HE's customer's customer's customers are the users of the internet network connection. Thus, HE cannot be vicariously liable for the alleged copyright infringement.

**Even if Hurricane Electric Was Somehow Liable for Copyright Infringement – Which is Emphatically Denied – HE is protected by the DMCA Safe Harbor**

As established above, HE is not liable for any sort of copyright infringement. Without any infringement, the *threshold* has not been met and no safe harbor discussion is necessary. Nonetheless, for completeness, even if HE were somehow liable for some type of copyright infringement, which is emphatically denied, HE, as an online service provider which does not provide any intermediate or transient storage (as defined in 17 U.S.C. § 512(k)(1)(B), would not have any liability due to the safe harbor limitation of liability under 17 U.S.C. § 512(i).

**Hurricane Electric Is Not Subject to Jurisdiction in Hawaii**

Jurisdiction over HE in Hawaii has not been, and cannot be, established. HE is located, headquartered and operates from Fremont, California. California is HE's principal place of business. Indeed, HE does not even have a place of business in Hawaii.

**HE Has No Interest in This Matter**

As a practical matter, HE has no interest, financial or otherwise, in your clients' disputes with alleged infringers who may have improperly downloaded movies. As such, HE promptly provided you with information, including names and addresses, of the subscribers who leased the internet connections. That gave your clients all of the information they needed to take appropriate action against the alleged infringers.

**Conclusion**

I understand from my client – which I trust must have been a miscommunication – that you took the position that your clients were not obligated to go after the actual infringers or to seek the actual infringers' identities from the ISPs which purchase internet connections from HE. That statement would be facially erroneous, as discussed above, as the cases discussed above make it clear that your clients have the burden of proof and cannot prove infringement merely by relying upon the fact that HE is an online service provider of an internet network connection.

If you have facts supporting a *prima facie* case against HE, I am open to receiving those facts. Again, that must be on a client by client basis as we will keep meticulous records for a later attorney fee petition.

Finally, if you would like to discuss this matter, I am available by telephone this month, and, travel restrictions due to COVID-19 permitting, I will be in Kona next month where we can meet in-person after I complete my arrival quarantine/isolation.

Absent a further response from you by June 15, 2020, we will consider this matter closed.

Sincerely yours,

Neil D. Greenstein


CULPEPPER IP, LLLC

ATTORNEY AT LAW

KERRY S. CULPEPPER *

* ADMITTED TO PRACTICE IN VIRGINIA, HAWAI'I AND BEFORE THE USPTO

75-170 HUALALAI ROAD, SUITE B204
KAILUA-KONA, HAWAII 96740

TEL: (808) 464-4047
FAX: (202) 204-5181

WWW.CULPEPPERIP.COM

PATENTS, TRADEMARKS & COPYRIGHTS

Via E-mail<copyright@he.net>

May 20, 2020

Via First Class Mail
Neil D. Greenstein
TechMark
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102

Re: Cease and Desist of Direct Copyright Infringement, Contributory Copyright Infringement at Hurricane Electric Subscriber IP addresses
My Reference and Case Number: 19-cv-169-LEK-KJM (District of Hawaii)

Dear Mr. Greenstein,

I am writing in reply to your reply letter of May 15, 2020 (but incorrectly dated June 15, 2020). As you most likely expect, I disagree with all your legal conclusions and factual assertions. HE account holders directly infringed and continue to infringe my clients' exclusive rights of at least reproductions and distribution. HE contributes to these infringements by continuing to provide Internet service to these account holders despite the Infringement Notices ("Notices") sent to HE by my clients' agents.

In the outset, I would like to point out that in your email of April 19, 2020 you stated, "Please identify the clients you represent and the IP address on which your clients' rights have allegedly been infringed. We can then address those claims…" That is exactly what I provided to you. However, in your reply letter you stated that my letter "…failed to identify sufficient facts even to make out a prima facie case of infringement.". You did not request that I send the data files, notices, or other evidence of infringements by HE account holders. I sent to you exactly what you requested – the IP addresses, client names and their motion pictures.

**The Evidence of Direct Infringement of HE account holders**

My clients' agent Maverick Eye ("MEU") identifies IP addresses on peer-to-peer networks distributing my clients' motion pictures by monitoring resources that broadcast IP

addresses sharing the motion pictures. In many cases, MEU can monitor these IP addresses at various stages of downloading and confirm whether the user at the IP address possesses 100% of the infringing file copy. MEU performs a data exchange with each IP address to confirm actual distribution of the infringing file copy of the motion picture. The Notices are then sent to ISPs such as HE based upon the evidence of actual distribution. Thus, the evidence obtained by the MEU will establish a *prima facie* case of a direct infringement and distribution of my clients' exclusive right to distribute and reproduce their motion pictures. This is the same type of circumstantial evidence of direct infringement that the Western District of Texas found acceptable in *Grande* and the Eastern District of Virginia found acceptable in *Cox I* and *II.*

Finally, each of Notices includes the illicit file names of the motion picture shared by the account holder. For example, in the two exemplary notices I sent in the first letter the file names are: Hellboy (2019) [BluRay] [1080p] [YTS.LT] (obtained from YTS.LT) and Hellboy.2019.1080p.KORSUB.HDRip.x264.AAC2.0-STUTTERSHIT (obtained from RARBG.TO). The file names are also circumstantial evidence that they are illegitimate copies made from the same HE IP address and thus a direct infringement of my clients' exclusive right of reproduction in their motion pictures.

You argue that Ninth Circuit decision in *Cobbler Nevada* prevents me from establishing the direct infringements of the account holders unless I point out the specific end user responsible. I find it amusing that you seek to compare your client HE – described by you as an OSP that provides B2B-type connections to account holders across the United States and competes with Verizon, Comcast and AT&T– to the adult day care center operator Defendant in *Cobbler Nevada* that provided WiFi service to its adult residents. The differences are so stark that it is hard to take the comparison even seriously. The adult day care center Defendant in *Cobbler Nevada* did not have accountholders to terminate in response to Notices. When the Plaintiff ISP Grande Communications Networks, LLC ("Grande") attempted to make this same argument in the Western District of Texas it was completely rejected just in a footnote. *See UMG Recordings, Inc., et al. v. Grande Communications Networks, LLC,* 1:17-CV-365-DAE, Doc. #268, pg. 40 ("*Grande*"). This argument was also rejected by the Eastern District of Virginia in *Sony Music Entertainment et al v. Cox Communications, Inc. et al*, 1:18-cv-00950-LO-JFA, Doc. #586, pgs. 22-24 (*"Cox II*").

**The Evidence of Contributory Infringement**

Without conceding that the Ninth Circuit is the relevant law, in the Ninth Circuit, generally one infringes contributorily by intentionally inducing or encouraging direct infringement. Some decisions require knowledge. However, under any standard of contributory infringement HE is liable because HE had *actual* knowledge of direct infringements from the numerous Notices my clients' agent sent to you. Even when HE ignored many of these Notices,

HE's willful blindness in these circumstances also satisfies the knowledge requirement. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

HE encourages or materially contributes to the account holders' direct infringements by providing the facilities and means for the account holders' to continue their infringements – namely the Internet service. Along this line, I found it interesting that you would challenge that HE has directly or contributed to copyright infringements while conceding that HE acts as a "…"highway" and provided subscribers with internet access"… and operates a "data center". Even if transmissions of infringing material are performed by the end user, HE performs "…the transmission, routing, provision of connections, or storage of the infringing material" by the HE data center and/or routers and servers that makeup his "highway". These are the activities that an OSP performs to, for example, transport data packets from the account holder to the next destination. This very concern that these activities would render all OSPs liable for direct and contributory infringement is one of the reasons that the DMCA was passed by Congress. That is why it is important for an OSP to comply with the provisions of the DMCA such as in 17 USC 512(i)(1)(A) to keep its safe harbor. However, not only has HE failed to comply with this provision by not taking meaningful actions in response to the Notices from my clients' agents, it is apparent that HE did not even forward many of these notices to their account holders. Nonetheless, HE had knowledge of its account holders' infringing activity by the notices my clients' agents sent to HE but still continued to provide normal data transmission operations to provide the "highway" so the infringements continued. Accordingly, HE encouraged and/or materially contributed to the copyright infringements. HE could have taken the simplest measure to terminate the customer account and stop further infringement – namely terminating the account but the profits from these infringing accounts were simply to delicious for HE to pass up.

Besides HE's liability for contributing to the direct infringements of its account holders, arguably HE is also liable for its own direct infringements of my clients' motion pictures. Particularly, when HE routed the data packets of the infringing material from its account holders to destinations, HE likely copied and temporarily stored copies of the materials during the normal transmission, routing, and provision of connections. Ordinarily, HE would probably not be liable because of lack of volitional conduct. However, because HE had actual knowledge of the infringing activity, yet continued to provide service for the account holders, a Court may decide that HE has sufficient volitional conduct to be liable for direct infringement.

**Vicarious Liability**

I have not made assertions regarding whether HE is liable under vicarious copyright infringement. However, I note that the District Court of Colorado rejected arguments similar to yours made by the Defendant in *Warner Records Inc. v. Charter Communications, Inc.*, 1:19-cv-

00874-RBJ-MEH, Doc. #157. Particularly, the District Court determined that the Plaintiffs' allegations that Defendants' failure to stop or take other action in response to notices of infringement is a draw to current and prospective subscribers was sufficient for the "direct financial benefit requirement" and that Charter's ability to terminate those users about whom it is notified was sufficient for the "right and ability to supervise the infringing activity". Id. at pgs. 10-12. Your arguments were also rejected in *Cox II*.

**The Recent ISP Cases**

It is not surprising that you do not mention any of the recent ISP copyright infringement cases such as *Grande*, *Cox I* and *II* and *Warner Bros. Records, Inc. v. Charter*. None of these cases support your position. In the contrary, in *Sony* the Eastern District of Virginia rejected Cox's argument that it was not responsible for the infringements of business customers who had numerous downstream users – the same argument you are attempting to make. The Central District of California rejected an attempt by Cloudflare to make a similar argument in *ALS Scan, Inc. v. CloudFlare, Inc.* and concluded that CloudFlare could be liable under a material contribution theory because CloudFlare could take the simple measures of terminating the customer account to stop further infringement.

> The simple answer as to whether Cloudflare could have done something simple to stop the infringement is "yes": Cloudflare can, but does not, end its business relationship with websites that it knows (or arguably knows) are serial infringers.

ALS Scan, Inc. v. CloudFlare, Inc., No. CV 16-5051-GW(AFMX), 2017 WL 1520444, (C.D. Cal. Feb. 16, 2017). HE could do the same here.

**HE has no safe harbor**

As argued previously, HE has no safe harbor because it failed to take meaningful actions against its account holders let alone termination in response to the multiple notices. You stated that "…HE, as an online service provider which does not provide any intermediate or transient storage…would not have any liability…" Please explain to me how HE performs its data routing services to provide a "highway" to the content provided to its customers/subscribers without temporarily storing, copying, and forwarding the data packets. It is telling that you spend only one paragraph in your reply letter arguing that HE has a safe harbor.

**Jurisdiction**

I never argued that jurisdiction of HE in Hawaii is appropriate. However, it should be noted that when the HE subscribers sent copies of my clients' motion pictures (in the 19cv169 case) to the Hawaii Defendants, HE purposefully directed electronic activity into this District. Particularly, since HE acted as a "highway" as you state, HE *knew* the destination of these data packets, namely to IP addresses in Hawaii. Further, many of my clients' claims for copyright infringement arise from this activity. Moreover, the HE infringing account holders appear to be

dispersed across the United States – some in the same districts as the Courts in *Grande, Cox I* and *Cox II*. The purposeful direction test will likely support jurisdiction in the forums where the infringement occurred as well.

**Conclusion**

     I sincerely hope that HE reconsiders its position after reviewing the above points and agrees to our three requests (terminate the account; agree to take appropriate action on further notices; pay a portion of the damages). Please consider the vast damage that is being done to my clients by these HE customers. To give a concrete example, in my previous letter I pointed out that the clients' agent had sent multiple notices regarding infringements for the account of IP address 72.52.87.188 ("188"). Nonetheless, since the date of that previous letter MEU has captured nearly 50 more instances of copyright protected content being illegally shared from the 188 address. For example, MEU captures the motion picture *The Rest of Us* of our client Sugar Shack Productions Ontario, Inc. being shared at the 188 address on 2020-04-28 06:06:38 UTC and the motion picture *The Hurricane Heist* of our client Screen Media Ventures, LLC being shared multiple times from 2020-03-26 20:19:10 to 2020-03-27 00:36:54 UTC at the 188 address. None of these infringements would have happened if HE had terminated this account after my previous letter. You may notice that these two clients and motion pictures were not included in the previous list. The problem is that the longer HE fails to terminate the accounts of repeat infringers such as the 188 address that have become piracy cesspools, more of my clients' motion pictures are infringed.

     I respectfully request a reply to my letter by June 15, 2020. This letter is written without prejudice to the rights and remedies of my clients, all of which are expressly reserved.

Sincerely,
/ksc/
Kerry S. Culpepper
kculpepper@culpepperip.com