IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HURRICANE ELECTRIC, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL FIRE INSURANCE COMPANY OF HARTFORD,<br><br>Defendant. | Case No. 20-cv-05840-CRB<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Internet service providers use Plaintiff Hurricane Electric ("Hurricane")'s business to business Internet-related services to provide Internet access to individual customers. Hurricane argues that Defendant National Fire Insurance Company ("National Fire") is contractually obligated to reimburse Hurricane for costs associated with Hurricane's attempts to secure declaratory relief in a copyright dispute. Hurricane requests declaratory relief here as well, and has moved for summary judgment. National Fire has moved for judgment on the pleadings. The Court DENIES Hurricane's motion for summary judgment and GRANTS National Fire's motion for judgment on the pleadings.

**I.   BACKGROUND**

   **A.   Copyright Infringement Allegations**

On March 19, 2020, Hurricane received a Cease and Desist Letter ("the C&D Letter") from a law firm representing owners of copyright-protected motion pictures. C&D Letter (dkt. 1-3). The C&D Letter alleged that Hurricane failed to act in response to over 290 infringement notices that were previously sent to Hurricane. Id. at 2. The notices had asked Hurricane to terminate Hurricane subscribers that had repeatedly infringed upon

copyrighted motion pictures, and had alleged that the subscribers were "induced" to infringe by "promotional language" on Hurricane's webpage. Id. at 3–9. The C&D Letter alleged that Hurricane was "liable" for copyright infringement because it had "not terminated" these accounts. Id. at 3. The alleged copyright infringement happened between February 2018 and March 2020. C&D Letter at 2–3. The C&D Letter requested that Hurricane: 1) terminate service to subscribers that allegedly infringed; 2) terminate accounts in response to all further copyright notifications; and 3) pay a portion of the damages. Id. at 2–3. In subsequent email correspondence with Hurricane, the copyright owners alleged that Hurricane itself had infringed by "rout[ing] the data packets of the infringing material from its account holders to destinations." May 20 Email (dkt. 1-15) at 3. They further alleged that Hurricane "encourages or materially contributes to the account holders' direct infringements by providing the facilities and means for the account holders' to continue their infringements." Id.

### B.     The Agreement

The language relevant to this dispute is located in the Commercial General Liability Coverage Form ("CGL Coverage Form") in Hurricane and National Fire's 2015 insurance agreement ("Agreement"). Rider Dec., Ex. A. at 86–101; Agreement at 86–101.[1] There, the Agreement states:

> [National Fire] will pay those sums that [Hurricane] becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. [National Fire] will have the right and duty to defend [Hurricane] against any "suit" seeking those damages. However, [National Fire] will have no duty to defend [Hurricane] against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. [National Fire] may, at [its] discretion, investigate any offense and settle any claim or "suit" that may result.

Agreement at 91. The Agreement defines "personal and advertising injury" as "Infringing

---

[1] Hurricane cites this language from the CGL Coverage Form but did not include the form when it attached the Agreement as an exhibit. See Comply., Ex. 6 (dkt. 1-6). The CGL Coverage Form is attached to National Fire's Motion for Judgment on the Pleadings, see Rider Dec., Ex. A (dkt. 16-1) at 86, and its Opposition to Hurricane's Motion for Partial Summary Judgment, see Agreement (dkt. 29-2) at 86.

upon another's copyright, trade dress or slogan in your 'advertisement.'" Agreement at 100.  The Agreement defines "suit" as:

> a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
> a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Agreement at 101.

### C. National Fire's Denial of Coverage

Hurricane notified National Fire of the alleged copyright claims on May 27, 2020.  Compl. (dkt. 1) ¶ 47.  At that time, "no lawsuit" had "yet been filed."  May 27 Letter (dkt. 1-7) at 1.  On July 1, 2020, National Fire denied coverage for the copyright claims on the grounds that the proceedings between Hurricane and the copyright claimants did not constitute a "suit" and there was no "advertising injury" under the Agreement.  July 1 Letter (dkt. 1-9) at 3–11.  On July 24, 2020, Hurricane invited National Fire to attend a mediation between Hurricane and the copyright claimants.  July Email (dkt. 1-10) at 2.  On July 28, 2020, National Fire declined to attend the mediation, stating the same reasons for which it initially denied coverage.  Id. at 1.

### D. Hurricane's Declaratory Relief Actions

In two related cases, Hurricane seeks declaratory judgments that it has not infringed any copyrighted materials, or in the alternative, that it is shielded from liability.  Compl. ¶¶ 1–2, 26, 35; see generally Complaint, Hurricane Electric, LLC, v. Millennium Funding, Inc., et al., Case No. 2:20-cv-01034 (D. Nev. June 10, 2020), ECF No. 1; Complaint, Hurricane Electric, LLC, v. Dallas Buyers Club, LLC, et al., Case No. 4:20-cv-03813 (N.D. Cal. Aug. 19, 2020), ECF No. 1.  Hurricane now seeks a declaratory judgment that National Fire has a duty to pay policy benefits to Hurricane, i.e., to reimburse Hurricane for its expenses in these actions.  Compl. ¶¶ 1, 27.  Hurricane contends that National Fire's

duty to reimburse arises from Hurricane's advertising of services—between January 24, 2015 and January 24, 2016, when Hurricane was insured by National Fire's "2015 Policy"—that allegedly facilitated copyright infringement. Id. ¶ 36, 41–42.

### E. The Pending Motions

National Fire has moved for judgment on the pleadings and argues that the policy bars coverage for expenses associated with Hurricane's declaratory relief actions. See generally MJP (dkt. 15). Hurricane opposes National Fire's motion and has moved for partial summary judgment as to National Fire's duty to defend. See generally Opp. to MJP (dkt. 31); MSJ (dkt. 21).

## II. LEGAL STANDARD

### A. Declaratory Judgment

"In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights . . . of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

### B. Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted). As with a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). "A dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved[.]'" McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) (quoting Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d

4

1480, 1482 (9th Cir. 1984)). A court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

### C. Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the evidence that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

A liability insurer owes a duty to defend when a suit brought against its insured seeks damages that potentially fall within the coverage of the policy. Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 19 (1995). "Where there is no possibility of coverage, there is no duty to defend." Id. (internal quotation marks omitted). "To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." Montrose Chem. Corp. of Cal. v. Super. Ct., 6 Cal. 4th 287, 300 (1993) (emphasis in original). To determine whether an insurer owes a duty to defend, a court must "compar[e] the allegations of the complaint with the terms of the policy." Id. at 295. Because California is the forum state in this diversity action, California law governs the Court's interpretation of the Agreement. See Encompass Ins. Co. v. Coast Nat'l Ins. Co., 764 F.3d 981, 984 (9th Cir. 2014); Bell Lavalin, Inc. v. Simcoe

5

& Erie Gen. Ins. Co., 61 F.3d 742, 745 (9th Cir. 1995).[2] Under California law, "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 647 (2003), as modified on denial of reh'g (Sept. 17, 2003).

Hurricane argues that National Fire owes a duty to defend under the Agreement because: 1) there is a suit; and 2) the injury arises out of alleged infringement in Hurricane's advertisements. Compl. ¶¶ 52–67.[3] The Court disagrees and denies declaratory relief because: 1) there is no suit within the meaning of the Agreement; and 2) the related declaratory judgment actions do not involve alleged copyright infringement in Hurricane's advertisements.

### A. Absence of a "Suit"

National Fire argues that it has no duty to defend Hurricane because there is no "suit" to trigger coverage. According to the Agreement, National Fire has "the right and duty to defend the insured against any 'suit' seeking [personal and advertising] damages." Agreement at 91. As discussed above, the Agreement defines the term "suit" as:

> a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
> a) An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
> b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Id. at 101. Hurricane has failed to show the existence of such a "suit."

First, the C&D Letter does not constitute a "suit." "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual

---

[2] The parties agree. See Compl. ¶ 20; See generally MJP at 8–9; MSJ.
[3] The parties also dispute whether the "Insureds in Media and Internet Type Businesses" exclusion bars coverage. See MSJ at 26; Opp. to MSJ at 25–26. The Court need not address these arguments.

6

interpretation apply." Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109, 1115 (1999). When insurance policies expressly define a term, that definition governs. See Rosen v. State Farm General Ins. Co., 30 Cal. 4th 1070, 1074 (2003). The Agreement defines the word "suit" as "a civil proceeding," "arbitration proceeding," or "[a]ny other alternative dispute resolution proceeding" in which damages are alleged. Agreement at 101. The C&D letter alone is plainly not an arbitration or alternative dispute resolution proceeding. And civil proceedings are initiated when a party files a complaint in court. See Foster-Gardner, Inc. v. National Union Fire Ins. Co., 18 Cal. 4th 857, 878-79 (1998). Civil proceedings differ from claims, which "can be any number of things, none of which rise to the formal level of a suit." Id. (quoting Fireman's Fund Ins. Co. v. Super. Ct., 65 Cal. App. 4th 1205, 1216 (1997) (noting that a written demand for payment is an example of a claim). Because the C&D Letter does not amount to any covered "proceeding," it is at most a "claim" rather than a "suit."[4] Thus, National Fire has no duty arising from the C&D Letter.

Alternatively, Hurricane argues that even if the C&D Letter does not fall within the Agreement's definition of "suit," its mediation with the copyright claimants does. See MSJ at 10–11; Reply to MSJ at 22–24. Hurricane cites to the following language:

> "Suit" includes . . .
>
> b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Agreement at 101.

---

[4] The Agreement does not impose a duty upon National Fire to defend Hurricane against "claims." The Agreement states:

> We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

Agreement at 91 (emphasis added).

Hurricane's argument fails. Subsection (b) applies when two conditions are satisfied. Id. First, the party seeking coverage must show "any other alternative dispute resolution proceeding in which such damages are claimed." Id. Second, the party seeking coverage must show that the insured submitted to the alternative dispute resolution proceeding with National Fire's "consent." Id. In its complaint, Hurricane misleadingly reproduced the definition of "suit" while omitting the phrase "with our consent" from subsection (b). See Compl. ¶ 46. Although Hurricane's mediation is an "alternative dispute resolution proceeding" (and assuming that it qualifies as a proceeding in which damages are claimed), Hurricane fails to satisfy the second condition of subsection (b) because National Fire did not consent to the mediation between Hurricane and the claimants. See Compl. ¶ 50; Answer ¶ 50. As Hurricane acknowledges, when Hurricane notified National Fire of the C&D Letter and the mediation, National Fire denied coverage, explicitly declined to participate in the mediation, and said nothing to state or imply consent. See Compl. ¶ 50; Answer ¶ 50; July Email at 1.

Indeed, Hurricane has not indicated that it sought National Fire's consent before submitting to mediation. Hurricane's counsel emailed a National Fire claims representative to inform her that Hurricane was participating in a scheduled mediation with the copyright claimants and that she was "invited to attend" the mediation. See July Email at 2. In response, National Fire, through its claims representative, informed Hurricane that she would not attend the mediation "as coverage has been disclaimed under the policies as outlined in its July 1, 2020 coverage disclaimer." Id. at 1. Because this email merely reiterates National Fire's denial of coverage, it cannot be construed as National Fire's consent to the proceeding.[5]

---

[5] Hurricane relies on two cases that do not support a different conclusion. See Reply to MSJ at 21–22. Wiseman-Hughes Enters. v. Harleysville Lake States Ins. Co., a Northern District of Illinois case, addressed a scenario where the insurance company did not respond to "repeated requests to participate or advise regarding the mediations." No. 07 C-0336, 2009 WL 972857, at *3–4 (N.D. Ill. Apr. 8, 2009). At most, Wiseman-Hughes stands for the proposition that whether such silence can constitute consent is a question "for the trier of fact." Id. at *4. Here, National Fire not only responded but also explained why it refused to participate in the mediation. See July Email at 1. And in Melssen v. Auto-Owners Ins. Co., a Colorado case, the insurance company

8

The mediation between Hurricane and the copyright claimants was not an alternative dispute resolution proceeding to which National Fire consented, so the mediation does not constitute a "suit" under subsection (b). Hurricane has thus failed to show the existence of a "suit" under the Agreement.

### B. Personal and Advertising Injury

Hurricane is ineligible for reimbursement for another, independent reason: its declaratory relief actions are not related to any "Personal and Advertising Injury" covered under the Agreement. The Court agrees with National Fire that the alleged copyright infringement is not a covered "Personal and Advertising Injury" because there is no alleged copyright infringement in Hurricane's advertisements. Opp. to MSJ at 22–25.[6]

The "Personal and Advertising Injury" section states that National Fire will pay damages for "'personal and advertising injury' to which this insurance applies." Agreement at 91. But the Agreement excludes from coverage "'personal and advertising injury' arising out of the infringement of copyright . . . rights." Id. at 92. An exception to that exclusion reads: "this exclusion does not apply to infringement, in your 'advertisement,' of copyright . . . ." Id. (emphasis added). Hurricane argues that this exception covers the infringement alleged in the C&D Letter. Compl. ¶¶ 36, 107–10; MSJ at 12–19.

That is wrong. Hurricane incorrectly argues that the C&D Letter asserts that contributory or vicarious copyright infringement "occurred within [Hurricane's 2015] advertisements." Compl. ¶ 36 (emphasis added). The C&D Letter, and the subsequent email correspondence between Hurricane and the claimants' lawyer, do not allege

---

forfeited any argument "restricting the jury's finding on the element of consent to express consent" by failing to either (1) object to the policyholder's implied consent argument, or (2) request a jury instruction to that effect. 285 P.3d 328, 335 (Colo. 2012).

[6] National Fire argues that the PAI Endorsement, which it attaches as an exhibit to its motion, bars coverage. See MJP at 9; Agreement at 117. Hurricane disputes both the authenticity of the PAI Endorsement and the enforceability of the endorsement. Opp. to MJP at 4–9; MSJ at 20–26. Because the Court concludes that the alleged copyright infringement is not covered as a "Personal and Advertising Injury," the Court need not determine whether the PAI Endorsement separately precludes coverage.

infringement in Hurricane's advertisements, or even mention advertisements. See generally C&D Letter; May 1 Letter (dkt. 1-5); June 15 Letter (dkt. 1-14); May 20 Email. The C&D letter states that Hurricane's subscribers directly infringed, while Hurricane is liable because it "encourage[d] or materially contribute[d] to the account holders' direct infringements by providing the facilities and means for the account holders' to continue their infringements – namely the Internet service." May 20 Email at 3 (emphasis added). But even if certain advertisements might have led customers to services that enabled infringement, there is no allegation of infringement in the advertisements themselves.[7]

Hurricane argues that various cases establish that "enticing" customers to use a product is copyright infringement because there is a connection between the advertisement and the alleged infringement. Reply to MSJ at 24–28. But in each case, there was infringement in "advertisements," or the underlying complaint directly alleged "advertising injury." See Street Surfing, LLC v. Great American E&S Ins. Co., 776 F.3d 603 (9th Cir. 2014); Lexington Ins. Co. v. MGA Entm't, Inc., 961 F. Supp. 2d 536 (S.D.N.Y. 2013); Acuity v. Bagadia, 750 N.W.2d 817 (Wis. 2008); R.C. Bigelow v. Liberty Mutual Ins. Co., 287 F.3d 242 (2d. Cir. 2002); AMCO Ins. Co. v. Lauren-Spencer, Inc., 500 F.Supp.2d 721 (S.D. Ohio 2007); Interface, Inc. v. Standard Fire Is. Co., 2000 U.S. Dist. LEXIS 14019 (N.D. Ga., Aug. 15, 2000); Mid-Continental Casualty Co. v. Kipp Flores Architects, LLC, 602 F. App'x 985 (5th Cir. 2015); King v. Cont'l Western Ins. Co., 123 S.W.3d 259 (Mo. App. 2003). In sum, even if there were a "suit," the Agreement would not entitle Hurricane to reimbursement for its defense against this sort of copyright infringement claim.

---

[7] Language in two of the previous copyright notices sent to Hurricane, attached to the C&D Letter as exhibits, stated that Hurricane "induced" copyright infringement with "promotional language" on listed webpages. C&D Letter at 5, 8. The notices, sent in July 2019, do not indicate that this promotional language constituted advertising, and do not reference when the promotional language existed or caused any infringement. Id. Without knowing the dates of the promotional language, it is impossible to determine whether this alleged induced infringement is covered by the Agreement's policy period of January 24, 2015 to January 24, 2016. Agreement at 11. Hurricane claims that it ran two advertisements in 2015, Compl. ¶ 36–40, but nothing indicates that the copyright claimants based any allegations on those advertisements.

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** National Fire's motion for judgment on the pleadings and **DENIES** Hurricane's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: November 17, 2020



CHARLES R. BREYER
United States District Judge